HARRELL v. SMITH, *ET AL.*

(136 S. E., 559)

VENDOR AND PURCHASER—PURCHASER QUITCLAIMING TO HIS DEFAULTING VENDOR'S VENDORS HELD ENTITLED TO CANCELLATION OF PURCHASE MONEY NOTES BUT NOT TO REIMBURSEMENT FOR IMPROVEMENTS.— Certain persons, having contracted to purchase land, divided it into parcels for purpose of auction sale. At the sale one S., who had acquired a one-third interest in the enterprise, induced plaintiff to purchase two parcels, loaned him money necessary for cash payment, and took mortgage on plaintiff's home place as security. Later plaintiff, who had made considerable improvements, and his vendors, who were unable to complete their purchase, quitclaimed to the original owners; plaintiff's note for amount of cash payment and mortgage having in the meantime been transferred by S. to

himself and others as executors. *Held,* plaintiff was entitled to cancellation of this note and mortgage and to other purchase-money notes but not entitled to recover value of improvements made; his quitclaim deed being waiver of such right.

Before SHIPP, J., Florence, February, 1925. Affirmed.

Action by J. S. Harrell against C. Ray Smith and others. Judgment for plaintiff and defendants appeal.

Following is the decree of Judge S. W. G. Shipp in the Court below:

"This is a suit by J. S. Harrell, plaintiff against C. Ray Smith, individually, T. H. Houck and W. T. McGowan and C. Ray Smith, Chas. L. Smith and Hugh P. Smith as the executors of the last will and testament of Chas. A. Smith. The following are the salient facts out of which the suit arises.

"In 1920, Messrs. Houck and McGowan contracted for the purchase of a tract of land near Timmonsville, owned by McKenzie and Purvis. They caused the same to be subdivided into parcels for the purpose of an auction sale to be held on September 1, 1920; prior to the sale C. Ray Smith became interested with Houck and McGowan to the extent of a one-third share. The plaintiff Harrell attended the sale upon Smith's invitation, and thereat, upon Smith's solicitation, became a bidder. Two parcels of land were bid off by him.

"According to the terms of the auction sale, a cash payment was required. The plaintiff Harrell had been unwilling to bid because of his inability to make this payment, but Smith had volunteered to personally finance this for Harrell and to take Harrell's note, secured by a mortgage of Harrell's home place, therefor. Accordingly, Harrell executed and delivered a note to Smith in the sum of $2,994.-60, the amount of the cash payment required, securing same by the execution and delivery of the mortgage on his home place. Following the sale, a formal contract was

entered into, providing, among other things, for the execution of three notes for the balance due, said notes to be in the sum of $2,994.60 each, and to mature on January 1, 1922, January 1, 1923, and January 1, 1924, respectively. Thereafter Harrell was let into possession of the lands he had contracted to purchase, and he proceeded during the year 1921 to put certain improvements thereon, of the value of $3,000.

"Under the contract between Houck and McGowan and McKenzie and Purvis, the sale of the entire tract was to be consummated in December, 1920. Aside from the sale of the two parcels to Harrell and one other small parcel, there had been no other sales made at the auction. Subsequent to the auction, Smith had withdrawn. Accordingly, in December, 1920, Houck and McGowan paid McKnezie and Purvis $12,000, took title to the entire tract, and exexcuted a mortgage to McKenzie and Purvis for $24,000 covering the same. No further sales of the portion remaining on their hands were made by Houck and McGowan. Thus the matter stood when the time came for the second payment by Harrell, January 1, 1922. Houck and McGowan were unable to make payment to McKenzie and Purvis. Harrell claims he refused to make his payment because of their inability to carry out their contract. In this situation they seem to have tried to induce Harrell to take a deed from them and give them a mortgage. They claim that, if he had done so, they could have carried out their contract. Harrell claims that they could not have given him a deed, save one subject to the $24,000 mortgage. In any event, Houck and McGowan decided to give up the land, and they deeded it back to McKenzie and Purvis in consideration of the cancellation of the $24,000 mortgage. Harrell also agreed to quitclaim to McKenzie and Purvis whatever title he had in the parcels for which he had contracted.

"C. Ray Smith had meanwhile transferred the note and

mortgage given by Harrell for the first payment to C. Ray Smith, Chas. L. Smith, and Hugh P. Smith, as executors of the last will and testament of Chas. A. Smith, deceased.

"The present suit was started in November, 1922. The complaint contains two causes of action—the first for the cancellation of the note and mortgage given to Smith, and of the three notes given to Smith, Houck and McGowan for the balance of the purchase price; the second for damages to the extent of the value of the improvements placed by Harrell on the premises in question. The defendants, the executors of the last will and testament, set up the mortgage aforementioned and seek its foreclosure in this suit.

"In this situation, plaintiff claims that he is entitled to have the note and mortgage given by him for the payment canceled because the defendants were unable to carry out their contract to convey, and should not, therefore, be permitted to retain the payment made. The defendants claim that Harrell himself defaulted, and that but for his default they would have been able to carry out their contract. They therefore deem themselves entitled to retain what was paid. As to the three notes for deferred payments, it is admitted that these should be canceled, if in existence. There seems to be some doubt as to whether they were ever actually excuted.

"As I understand the law, one who contracts to sell real estate, and who receives a payment on account thereof, must, in order to establish his right to retain it, in the event of a subsequent default on the part of the vendee, show that he himself was, and is, ready, willing, and able to comply with his part of the contract by the conveyance of good title, clear of incumbrances. Unless he can show that, he is not entitled to retain the purchase money which has been paid. This the defendants herein have not been able to show. They have never been in a position to con-

vey a good title, clear of incumbrances, and before the commencement of this action they had by voluntary reconveyance to McKenzie and Purvis placed it entirely beyond their power to convey any title at all. I must hold, therefore that they are not entitled to retain the money paid, even though it be admitted that the plaintiff defaulted in the payment due January 1, 1922.

Considering now the situation with respect to the note and mortgage given to Smith, it is apparent that, had this note and mortgage been given to one not a party to the contract of sale, and the proceeds paid over to Smith, Houck, and McGowan as the first payment, the note and mortgage would be good, regardless of subsequent developments relative to the contract. In that case the plaintiff's remedy would have been to sue the vendors for money had and received.

"But the mortgagee herein, Smith, was a party to the contract, and the giving of the mortgage so closely associated with the entire transaction as to be part and parcel thereof. I therefore consider it as the first payment, and, by virtue of my decision on the first point, I am constrained to hold that the plaintiff is entitled to cancellation.

"Nor does the fact that it is now held by the executors of the will of Chas. A. Smith alter my conclusion in this regard. They stand in no better position than Smith individually. There is too complete an identity between Smith individually and Smith executor to permit him as executor to claim back of notice and knowledge of the transaction to which, as an individual, he was an interested party. This is particularly true in the light of his own statement that, in the matter of the transfer to the executors, he acted as the sole executor.

"Upon the second cause of action, I hold that the plaintiff is not entitled to recover. He had an equitable title to the lands he had contracted to buy, and when he surrendered

that by quitclaim deed I think he waived any right to insist upon reimbursement for the value of improvements placed on the premises in question.

"It is thereupon ordered, adjudged, and decreed that the note of J. S. Harrell to C. Ray Smith, dated September 1, 1920, due January 1, 1921, for the sum of $2,994.60, and the mortgage securing the same, bearing date the same day, and recorded in the office of the clerk of Court for Florence County in Book 40, at page 113, be, and the same hereby are, declared canceled, and the defendants C. Ray Smith, Chas. L. Smith, and Hugh P. Smith, as joint executors of the last will and testament of Chas. A. Smith, deceased, are hereby required to surrender the same for cancellation of record.

"It is further ordered, adjudged, and decreed that the three notes alleged to have been given by the plaintiff J. S. Harrell to C. Ray Smith, T. H. Houck, and W. T. McGowan, dated September 1, 1920, each for the sum of $2,994.60, and due, respectively, January 1, 1922, January 1, 1923, and January 1, 1924, be, and the same hereby are, declared canceled.

"The second cause of action of the complaint, and the suit for foreclosure by the executors are both dismissed.

"Let the defendants pay the costs of this action."

*Messrs. Wilcox & Hardee,* for appellants, cite: *Validity of contract to sell property not then owned by vendor:* 209 F., 291. *In action for breach of contract to purchase, seller must prove readiness and willingness to comply:* 296 F., 233; 279 F., 72; 83 F., 824. *Vendor need not make tender where vendee gives notice he will not comply:* 291 F., 435. *Rescission of contract not warranted on mere belief that opposite party will breach his contract:* 125 Tenn., 595; Ann. Cas., 1913–C, 376. *Equity will not divest an estate for breach of condition subsequent where vendee in posession:* 122 Miss., 190; 13 A. L. R., 560.

*Messrs. J. M.. Lynch* and *W. Marshall Bridges,* for respondent, cite: *Vendor in contract to sell real estate, having received part payment, in order to establish his right to retain it must show readiness and willingness to comply:'* 99 S. C., 83; 6 Rich. Eq., 324; 27 R. C. L., 626; 39 Cyc., 1371. *Defects in negotiable paper in hands of holder binding on transferee with knowledge:* 3 R. C. L., 1065; 2 Pomeroy Eq. Jur., 3rd Ed., Sec. 603.

June 4, 1926.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

After a careful examination of the record in this cause, we are convinced that the decree of his Honor, Judge S. W. G. Shipp, accords with equity and justice, and the same is hereby affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, COTHRAN and STABLER concur.